UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X  04 CV 1143 (NG) (KAM)
FELICIA SPARKMAN, on behalf of herself
and all others similarly situated,

                   **Plaintiff,**

    **-against-**                                      **OPINION AND ORDER**

**ZWICKER & ASSOCIATES, P.C.,**

                   **Defendant.**
------------------------------------------------------------X

**GERSHON, United States District Judge:**

    In this action purportedly brought on behalf of a class,[1] plaintiff, a debtor, alleges that defendant, a law firm specializing in consumer debt collection, has committed various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o. Defendant moves the court to enter judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or, in the alternative, to enter summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant also seeks an award of attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3). Finding that none of the material facts in this case are disputed, the court grants partial summary judgment in favor of defendant, and partial summary judgment in favor of plaintiff.

**FACTS**

    The undisputed facts of this case are as follows: Plaintiff defaulted on a credit card debt owed to Chase Visa/Mastercard. Defendant Zwicker & Associates, P.C. ("Zwicker") is a Massachusetts

---

[1] No motion for class certification has been made.

1

law firm that specializes in consumer debt collection. Zwicker represents The Bureaus, Inc. ("The Bureaus"), a company that purchases delinquent accounts. Following plaintiff's default, her Chase Visa/Mastercard account was purchased by The Bureaus.

On October 11, 2003, defendant sent plaintiff a form collection letter (the "Collection Letter"). The two page Collection Letter is printed on Zwicker letterhead and signed by one of Zwicker's attorneys. The subject line appears as follows:

> Re:         The Bureaus Inc.         Original Creditor: CHASE VISA/MASTERVARD [sic]
>
> Account No.:   4226632060482403     Balance:          $2,915.56 [footnotes omitted]

The body of the letter states:

> This office has been retained by The Bureaus Inc., an agent of the current owner of your account, to assist it in the collection of the funds you owe on the above-listed account. Your failure to respond to previous collection attempts has resulted in our retention. As of the date of this letter, the balance on your account is $2,915.56. Pursuant to the terms of your agreement with the creditor, the total balance is due and payable in full. Please note that interest, if applicable to your account, is accruing on the current principal balance at the rate of 12% per annum.
>
> Unless payment in full is made or you arrange for the repayment of this debt through this office in a manner acceptable to our client, this office will conduct a review of your account. As this office represents the above client, our review is undertaken to determine either the presence, or lack thereof, of a dispute to the indebtedness and, if none, the most effective means to secure repayment. Please be advised that our client seeks a non-litigious conclusion in this matter and no decision has been made on whether a suit would ever be filed. It is our hope that you will take this opportunity to contact our office concerning this matter.
>
> *Please note that this office shall assume the validity of this debt unless you dispute said debt, or any portion thereof, within thirty (30) days of receipt of this letter. Upon written notification that this debt, or any portion thereof, is disputed, this office shall obtain verification of this debt or a copy of a judgment against you and mail you a copy of such verification or judgment. Furthermore, upon written request within said (30) day period, this office shall provide you with the name and address of the original creditor, if different from the current creditor.*
>
> Again, unless you either dispute the debt within 30 days of receipt of this letter or contact this office to discuss repayment with Jason Houle, one of our non-attorney account managers, this office shall have no alternative but to proceed as indicated above.

The second page of the letter contains the following disclaimer (the "Disclaimer"):

> THIS LAW FIRM EMPLOYS SOME PERSONS WHO ARE NOT ATTORNEYS TO MAINTAIN CERTAIN CORRESPONDENCE IN WHICH THOSE PERSONS DO NOT ENGAGE IN THE PRACTICE OF LAW. THE NAMES OF OUR ATTORNEYS APPEAR IN THE ROSTER OF FIRM ATTORNEYS ON THE REVERSE SIDE OF THIS LETTER.
>
> ANY LETTER WITH A SERIES OF NUMBERS AND/OR LETTERS THAT APPEAR AFTER THE ALLEGED CREDITOR'S NAME IN THE 'RE:' SECTION OF THE LETTER WAS GENERATED BY A COMPUTERIZED PROCESS THAT WAS INITIATED FOLLOWING A REVIEW OF COMPUTERIZED DATA REFLECTING THE STATUS OF YOUR ACCOUNT. THIS DATA INCLUDES ITEMS SUCH AS YOUR NAME, ACCOUNT NUMBER, ACCOUNT STATUS, NAME OF THE ALLEGED CREDITOR, ALLEGED DEBT BALANCE, AND PAYMENT ACTIVITY OR LACK THEREOF. THIS COMPUTERIZED PROCESS WAS DESIGNED AND TESTED BY AN OFFICE ATTORNEY IN ORDER TO DETERMINE THE APPROPRIATENESS OF THE CORRESPONDENCE TO THE RECIPIENT. WHETHER THE LETTER STATES THAT THE PERSON SIGNING IT IS AN ATTORNEY, OR THE SIGNER'S NAME APPEARS IN THE ROSTER OF FIRM ATTORNEYS ON THE TOP OF THE LETTER, OR IF SIGNED BY A NON-ATTORNEY, THE REVIEW OF THE COMPUTERIZED DATA BASED UPON THE COMPUTERIZED PROCESS TO DETERMINE THE APPROPRIATENESS OF THE CORRESPONDENCE WAS MADE BY AN ATTORNEY AND AN ATTORNEY DID AUTHORIZE THE SENDING OF THE LETTER.
>
> ATTORNEYS IN THIS LAW FIRM ARE LICENSED TO PRACTICE LAW OR COMMENCE LAWSUITS ONLY IN THOSE STATES LISTED ON THE REVERSE SIDE OF THIS LETTER. IN THE EVENT THAT THIS LAW FIRM, AT SOME POINT, SHOULD RECOMMEND TO ITS CLIENT THAT A LAWSUIT SHOULD BE COMMENCED IN A STATE WHERE THIS LAW FIRM IS NOT LICENSED TO DO SO, THE CLIENT, UPON DECIDING TO START SUCH A LAWSUIT, WILL DO SO ONLY THROUGH A LAW FIRM LICENSED IN YOUR STATE. FURTHERMORE, THE FACT THAT OUR LAW FIRM MAT RECOMMEND THAT A SUIT BE COMMENCED DOES NOT MEAN THAT THE CLIENT WILL ACCEPT THE RECOMMENDATION TO INITIATE SUIT.

Plaintiff commenced the instant lawsuit on March 18, 2004, alleging various violations of the FDCPA. Specifically, plaintiff claims that the Collection Letter failed to identity the name of the creditor to whom the debt is owed as required by 15 U.S.C. § 1692g(a)(2), and that defendant employed false and misleading representations in violation of 15 U.S.C. § 1692e, falsely represented that communications were from an attorney in violation of 15 U.S.C. § 1692e(3), and used false representations and deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692e(10). She seeks an injunction restraining defendant from "engaging in conduct and practices

that are in violation of the FDCPA," a declaration "requiring defendant to make corrective disclosures," statutory damages, class damages, costs, and attorney's fees.

On August 12, 2004, plaintiff filed a voluntary petition for Chapter 7 bankruptcy. Plaintiff included her claim in the instant case (plaintiff's "FDCPA Claim") on Schedule B of her bankruptcy petition, which lists all of her personal property assets. She described the claim as "Potential claim under Fair Debt Collections Practices Act," and added "Maximum statutory damages of $1,000." In a column titled "CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION," plaintiff entered "0.00" with respect to the FDCPA Claim. Plaintiff was granted a "no-asset discharge" of her debts by the bankruptcy court on December 28, 2004.

Defendant now moves this court for judgment on the pleadings or, in the alternative, for summary judgment. Defendant argues that equitable relief is not available in private actions brought under the FDCPA; that plaintiff is judicially estopped from claiming money damages in this case because she declared the value of the claim to be zero dollars in the bankruptcy petition; that the Collection Letter sufficiently identified the creditor to whom plaintiff's debt was owed; and that the Disclaimer was sufficient to clarify any representations made by defendant concerning the extent of attorney involvement in the collection of plaintiff's debt.

## DISCUSSION

**I.      Standard of Review**

Federal Rule of Civil Procedure 12(c) provides, in relevant part, that: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the

4

pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Given that defendant has presented matters outside the pleadings, such as plaintiff's bankruptcy petition, for the court's consideration, and that defendant indicated at oral argument that summary judgment was the primary relief sought, defendant's motion will be governed by the standard for summary judgment.

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to decide an essential issue in favor of the non-moving party. *See id.* at 323. When the moving party has carried its burden under Rule 56(c), the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A court may grant summary judgment to the non-moving party *sua sponte*. *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir. 2000). Although prior notice to the parties of the court's

inclination to grant judgment *sua sponte* is not required, such notice is favored for policy reasons. *Id.* ("District courts are well advised to give clear and express notice before granting summary judgment *sua sponte*, even against parties who have themselves moved for summary judgment. The provision of such notice permits appellate courts much more readily to determine– as they are required to do– whether the absence of a cross-motion affected the result.") (internal quotations omitted). The court afforded both parties in this case an opportunity, at oral argument, to address whether a grant of summary judgment to plaintiff would be appropriate. Plaintiff conceded that there are no material facts in dispute, and defendant identified no evidence that it would rely on in opposition to a cross-motion for summary judgment that was not already before the court.

## II.    Availability of Injunctive and Declaratory Relief

The FDCPA contains no express provision for injunctive or declaratory relief in private actions, although it does authorize such relief in enforcement actions brought by the Federal Trade Commission. *Compare* 15 U.S.C. § 1692k *with* 15 U.S.C. § 1692l. After examining the statute's structure and legislative history, the Court of Appeals for the Third Circuit recently concluded that neither injunctive nor declaratory relief is available to private litigants under the FDCPA. *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004). *See also, Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("[A]ll private actions under the Fair Debt Collection Practices Act are for damages."); *Sibley v. Fulton DeKalb Collection Services*, 677 F.2d 830, 834 (11th Cir. 1982) ("Indeed, equitable relief is not available to an individual under the civil liability section of the Act."). Although the Court of Appeals for the Second Circuit has not had occasion to address the issue, multiple district courts in this circuit have likewise held that equitable

6

relief is not available to private litigants. *See, e.g., Petrolito v. Arrow Financial Services, LLC,* 221 F.R.D. 303, 312 (D. Conn. 2004)*; In re Risk Management Alternatives, Inc.*, 208 F.R.D. 493, 503 (S.D.N.Y. 2002); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 399 (E.D.N.Y. 1998); *Goldberg v. Winston & Morrone, P.C.*, 1997 WL 139526 (S.D.N.Y. 1997).[2]

Plaintiff's reliance on *Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir. 1995), for the availability of injunctive and declaratory relief is misplaced. In the course of assessing "the degree of success" obtained by appellant's attorney as part of its analysis of the reasonableness of a fee award, the Court noted that: "[Counsel] contends that the significance of her litigation before this court on the proper interpretation of § 1692e(11) warrants a fee award in the lodestar amount. We do not disparage the value of appellant's efforts in clarifying the application of the statute. At the same time, however, appellant achieved no equitable relief of any kind." *Carroll*, 53 F.3d at 630. The Court's analysis need not be understood to imply that equitable relief is available under the statute; the Court may have meant that, since equitable relief was not available to appellant, counsel's efforts in clarifying the statute were merely collateral to her client's goals in the lawsuit and should not, therefore, be a significant factor in determining the value of counsel's fee award. In any event, joining the majority of courts to address the issue, I hold that neither injunctive nor

---

[2]While the unavailability of injunctive relief appears well-settled, one line of district court cases has distinguished between injunctive relief and declaratory relief, holding that, while the former is not available to private litigants under the FDCPA, the latter is. *See*, *Gammon V. G.C. Services Limited Partnership*, 162 F.R.D. 313, 319-20 (N. D. Ill. 1995); *see also, Ballard v. Equifax Check Services, Inc.*, 158 F. Supp. 2d 1163 (E. D. Cal. 2001)*; Woodard v. Online Information Services*, 191 F.R.D. 502 (E.D.N.C. 2000); *Borcherding-Dittloff v. Transworld Systems, Inc.* 185 F.R.D. 558 (W.D. Wisc. 1999); *Young v. Meyer & Njus, P.A.*, 183 F.R.D. 231 (N.D. Ill. 1998). I am not persuaded by these cases that such a distinction is embodied in the statute. But, in any event, the "declaratory relief" sought in this case, an order requiring defendant to make corrective disclosures, is really injunctive in nature. That plaintiff labels the requested relief as declaratory relief does not make it so.

declaratory relief is available to a private litigant under the FDCPA. As a result, with respect to plaintiff's claims for injunctive and declaratory relief, summary judgment is granted in favor of defendant.

### III.     Judicial Estoppel from Claiming Money Damages

Judicial estoppel prevents a party from asserting a factual position in a pending legal proceeding that is contrary to a position taken by the party in a prior legal proceeding. *Bridgeway Corp.*, 201 F.3d at 141. A party invoking judicial estoppel must show that: (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding, and (2) that position was adopted by the first tribunal in some manner. *Id*. The doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. The doctrine also seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings. *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1037-38 (2d Cir. 1993). To warrant judicial estoppel, the contrary positions must be "fundamentally inconsistent" or "clearly contradictory." *Bridgeway Corp.*, 201 F.3d at 141 (emphasis omitted).

Here, defendant argues that plaintiff should be judicially estopped from asserting a claim for money damages because, in her bankruptcy petition, she listed the value of her FDCPA Claim as zero dollars. Defendant relies, in part, on *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003). In that case, the plaintiff filed a lawsuit alleging employment discrimination following a demotion. Initially, she sought only equitable relief, but later amended her complaint to add claims for compensatory and punitive damages. During the pendency of the suit, the plaintiff filed a voluntary petition for Chapter 7 bankruptcy. In the petition, plaintiff represented that she had not

8

been a party to any lawsuit during the year preceding her petition. She verbally informed the bankruptcy trustee (at a time subsequent to the amendment of her discrimination complaint) of the existence of the civil action, but indicated that the suit merely sought reinstatement to her prior position. After the bankruptcy court granted the plaintiff a no-asset discharge of her debts, the defendants in the discrimination suit moved for a finding of judicial estoppel as to her claims for money damages. The district court granted the motion, and the Court of Appeals for the Eleventh Circuit affirmed, making a specific finding that: "When the bankruptcy trustee asked [the plaintiff] for the monetary value of the lawsuit, she informed him that she only sought reinstatement of her previous position . . . . [The Plaintiff] did not tell the trustee that she was also seeking backpay, liquidated damages, and punitive damages . . . . Thus, it seems clear that [the plaintiff] deceived the trustee." *Barger*, 348 F.3d at 1296.

Unlike in *Barger*, where "neither [the plaintiff] nor her attorney ever listed the discrimination claim as an asset," *Barger*, 348 F.3d at 1295, the plaintiff here disclosed both the existence of her FDCPA Claim, and the fact that it could yield statutory damages of up to $1,000, on her bankruptcy petition. She did not attempt to hide the claim from the trustee, nor deceive anyone with respect to the relief that she sought. Contrary to the assertions of defendant, listing the "current market value" of the FDCPA Claim as zero dollars is not tantamount to taking a position that the claim is worthless. Current market value signifies the present value of plaintiff's interest in the claim, not the maximum potential value that the claim could yield in the future. Indicating a current market value of zero dollars may reflect a belief on the part of plaintiff that recovery, while possible, is uncertain, and that the present value of the claim, after being discounted by the risk of non-recovery, is *de minimis*. In any event, indicating in one forum that a certain claim has a maximum future value

9

of $1,000 but a current market value of zero dollars is not fundamentally inconsistent with pursuing that claim in another forum.

Allowing plaintiff to proceed with her claim for money damages in this case, notwithstanding the no asset discharge granted to her by the bankruptcy court, would neither impinge the sanctity of the oath, nor threaten judicial integrity. Accordingly, judicial estoppel is not applied.

IV. **Alleged Violations of the FDCPA**

   *A.   Sufficiency of the Creditor Identification*

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors," as well as "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). The FDCPA requires a debt collector to provide a consumer with a written "validation notice," within five days of its initial communication with the consumer, that sets forth "the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *see* 15 U.S.C. § 1692g(a). In determining whether these requirements have been met, an objective standard, measured by how the "least sophisticated consumer" would interpret the notice received from the debt collector, is applied. *Russell*, 74 F.3d at 34. The test has been described as how the least sophisticated consumer– one not having the astuteness of a "Philadelphia lawyer" or even the sophistication of the average, everyday, common consumer– understands the notice he or she receives. *Id*. The least sophisticated consumer standard best effectuates the Act's purpose of limiting the "suffering and anguish" often inflicted by debt collectors. *Id*.

Here, plaintiff claims that the Collection Letter, which was the only validation notice sent by defendant to plaintiff, failed to identify the name of the creditor to whom her debt is owed as required by 15 U.S.C. § 1692g(a)(2). The name of the creditor, "The Bureaus, Inc.," does appear in the subject line of the Collection Letter, but is not identified as a creditor, although Chase Visa/Mastercard is identified as the "original creditor." The body of the letter then describes The Bureaus as "an agent of the current owner of your account." This language suggests that the creditor is someone other than The Bureaus. The least sophisticated consumer would not deduce from reading the Collection Letter that the name of the creditor seeking collection is The Bureaus. Accordingly, plaintiff is entitled to summary judgment on her claim that defendant violated 15 U.S.C. § 1692g(a)(2).

### B. *Representations Concerning Attorney Involvement*

The FDCPA establishes a general prohibition against the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The sixteen subsections of §1692e set forth a non-exhaustive list of practices that fall within this ban. These subsections include:

> (3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> * * *
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*Id*. Like claims under 15 U.S.C. §1692g, claims under 15 U.S.C. § 1692e are evaluated with respect to the least sophisticated consumer standard. In the context of Section 1692e, the standard is

intended to serve a dual purpose: (1) to ensure the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices; and (2) to protect debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *Clomon*, 988 F.2d at 1320. A collection notice is deceptive when it reasonably can be read to have two or more different meanings, one of which is inaccurate. That a notice's terminology is vague or uncertain will not prevent it from being held deceptive under Section 1692e. *Russell*, 74 F.3d at 35.

Although there is no dispute that Zwicker is a law firm, or that the Collection Letter at issue in this case was "from" an attorney in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered to be from an attorney within the meaning of the FDCPA. *Miller v. Wolpoff & Abramson*, LLP, 321 F.3d 292, 301 (2d Cir. 2003). "[T]he use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent .... [T]he use of an attorney's signature implies– at least in the absence of language to the contrary– that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." *Clomon*, 988 F.2d at 1321.

Here, the body of the Collection Letter and the Disclaimer contain contradictory information about the level of attorney involvement in the collection of plaintiff's debt. The body of the letter states that: "Unless payment in full is made or you arrange for the repayment of this debt through this office in a manner acceptable to our client, this office will conduct a review of your account." That sentence implies that, as of the date of the letter, no Zwicker attorney had reviewed plaintiff's account. But then the Disclaimer states that: "[The computerized process used to create the Collection Letter] was designed and tested by an office attorney in order to determine the appropriateness of the correspondence to the recipient . . . . [T]he review of the computerized data based upon the computerized process to determine the appropriateness of the correspondence was made by an attorney and an attorney did authorize the sending of the letter." That language suggests

12

that a Zwicker attorney did review plaintiff's account prior to the mailing of the Collection Letter. Thus, with respect to the level of attorney involvement in the collection of plaintiff's debt, the Collection Letter may reasonably be read to have two different meanings, only one of which can be accurate. As a result, it is deceptive as a matter of law. *See Russell*, 74 F.3d at 35.

Defendant relies on two recent cases, *Pujol v. Universal Fidelity Corporation*, 2004 WL 1278163 (E.D.N.Y. 2004), and *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 2004 WL 1588208 (W.D.N.Y. 2004), to establish the proposition that the text of a disclaimer may be sufficient to overcome the implication, created by the use of an attorney's signature in a debt collection letter, that the attorney formed an opinion about how to manage the case of the debtor to whom the letter was sent. The court accepts this proposition, but finds *Pujol* and *Greco* to be significantly different from this case. In both of those cases, the language contained in the disclaimers was direct and clear. The letter in *Pujol* stated: "Do not consider this letter a notification of intent to sue, since I do not have the legal authority to sue. I have not, nor will I, review each detail of your account status, unless you so request." *Pujol*, 2004 WL 1278163. Likewise in *Greco*, the letter stated: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Greco*, 2004 WL 1588208. Here, on the other hand, the language contained in the Disclaimer is discursive and confusing, and tends to support, rather than dispel, an inference that an attorney was involved in reviewing plaintiff's account. Moreover, as discussed above, it contradicts statements made in the body of the Collection Letter.

The court concludes that plaintiff is entitled to summary judgment on her claim that defendant violated 15 U.S.C. § 1692e.

### V. **Statutory Damages**

Section 1692k(a) of the FDCPA authorizes the court to award a civil plaintiff actual damages, plus additional damages in an amount not to exceed $1,000. Here, plaintiff concedes that she suffered no actual damages. In fixing the amount of the damages award, the statute directs the court

to consider the following factors: "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional," as well as any other factors that are relevant. 15 U.S.C. § 1692k(b)(1). In light of these factors, I conclude that a statutory damages award in the amount of $750 is appropriate.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted to the extent that plaintiff's claims for injunctive and declaratory relief are dismissed, and is otherwise denied. With respect to plaintiff's claims for statutory damages for defendant's violations of 15 U.S.C. §§ 1692g(a)(2) and 1692e, the court grants judgment for plaintiff in the amount of $750. Defendant's application for attorney's fees is denied. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
      June 30, 2005